Thank you. Good morning everyone. This is Judge Park. I'm joined today by Judge Robinson and we're both grateful to have with us also Judge Rakoff who's joining us from the Southern District of New York. Thank you for your service. Pleasure. We have four cases on the calendar today and I understand that all counsel are present so we'll hear argument first in Petroff Amshen LLC versus Graig Garnovsky Chiropractic PC at all number 21847. Mr. Ginsburg? Yes, good morning, Your Honor. Whenever you're ready. Thank you, Your Honor. Good morning again to you, Judge Park, as well as Judge Robinson and Judge Robinson on behalf of the plaintiff appellant Petroff Amshen LLP. I think I should start out by saying to the panel that perhaps the complaint and process below was not the best organized effort, certainly from the perspective of a RICO claim, which as the panel no doubt knows has many moving parts and many requirements, each of which is enough to trip up even the most experienced practitioners. Excuse me. However, we do believe that we did allege enough to survive a motion to dismiss or at the very least enough to get one more opportunity to correct any deficiencies. When you say one more opportunity, you didn't move. Did you below to amend? That's correct, Judge Rakoff. We did not formally move to amend, but during well, I'm not sure what that means, but it formally move. I mean, that would not move in writing. Um, there was an instance during oral argument where council did request the opportunity, um, to, uh, to file an amended complaint. I think that was oral argument before the magistrate judge, um, where they did request opportunity to amend the complaint. If if the court decided that there were going to be any deficiencies in the pleadings. Um, so am I right, though, that even orally you never move before the district judge? I believe Judge Rakoff that there was an oral applicant. Well, I think at that point, Your Honor, I think what council requested was an opera was an opportunity to replete if there were going to be any deficiencies. Um, where do where do you find that? I see a place at page 8924 where Defense Council is saying it would be futile, um, to even warrant repleting. But I didn't see any, uh, requests, uh, by your side to replete. And certainly, as you say, there was no formal motion. Okay. Um, just one moment, Your Honor. There was a let's cite this in the brief. Um, just it's a page 8924. Yeah, that's the one I was just referring to that. I looked at that and it looked to me like it's just Defense Council speaking there saying, uh, by the way, we don't even think there would be a basis for, uh, amendment. I'll go back and take a look, but I don't see where you're requested leave to amend. Uh, that's that's correct, Your Honor. Um, I think at this point, this was uh, were to be granted for leave to appeal. Um, he did not believe that that, uh, that would be successful. But, um, I do believe so. You think your right to amend was preserved because of an argument you never made, but a passing reference to why it would be futile on the part of your adversary. Uh, I could see I could see why the court has some, uh, has some reservations about that for sure. Um, I think that, uh, the court's general approach, um, to to claims of deficiencies in the pleading rather than, uh, substantive deficiencies, um, has been to allow at least one. Well, I shouldn't say at least to allow an opportunity to replete. Um, I think in this case that would have certainly been warranted. I do wish below we would have made a formal application. Um, it's my general practice, uh, to to do that, um, either by way of a formal motion or at least orally or at to request that opportunity. Um, uh, but I think the court's general approach again has been to has been to allow that, um, where the issue is not, uh, definite inability to make out a claim, uh, but a pleading deficiency. Um, and I think in this case what we've alleged is is a scheme, uh, pursuant to which, uh, the defendants used, uh, my client's law firm as a, uh, as a focal point for, for, to, to avoid taxes essentially. Um, and, and my client has, has suffered damages as a result. So what are the damages you have actually suffered? Well, your honor, and again, and I have to confess, uh, this was not a model of clarity in the complaint, uh, but the damages suffered essentially were that, um, ironically, um, my client, uh, is a law firm that was involved, um, in, in defending, uh, medical officers who are accused of, uh, fraud and Rico violations. Um, and when this, uh, scheme came to light and, and my client was notified by another law firm involved in that, um, sphere of, uh, of, of activity, uh, of, of what, uh, what had happened, uh, there were medical offices, uh, who said, we can't continue using your firm because you're wrapped up in this, in this mess of, of, uh, where other medical officers apparently claimed that you were performing services on their behalf and you're claiming that they were not. So, um, the damages that my client suffered was the loss of those clients. So your complaint doesn't allege that at all, uh, in, in at least in a monetary fashion, paragraph one 30, you allege significant tax penalties in an amount to be determined in the future. And in paragraph one 31, you will say that you will suffer substantial injury to your firm's reputation and don't elaborate at all. Uh, neither of those would constitute, uh, cognizable damages with them. Well, I think as to the tax liability, um, the tax liability is, is a future event, which, which may or may not come to pass. So I agree, your honor, that I wanted to ask you about that. Has anything happened since, uh, the complaint was drafted in regard to your tax liability? Uh, not to my knowledge, your honor. Um, the client has not informed me of that. Um, but, but with respect to, but, but the reputational aspect is really, is really the damage here, because as I said, the, there are multiple clients that my client had, um, uh, that, that dropped, uh, its representation or, uh, took my client out of the running to represent it. Um, again, the complaint, just follow up on judge rickhouse question. You'd agree that's not in the complaint, right? There's a reputational, um, uh, injury generally speaking, but you don't, you don't allege that, um, any client came to you and said, we can't work with you anymore because of what happened here. That's correct. Judge park. Unfortunately, as I said, the complaint is not a model of clarity. Um, and I, and I, uh, wish I were involved below and, and, and, and I would have, uh, rectified that. But, uh, with respect to the damages, um, I think as, as we laid out in our, in our briefing damages, an issue of article three standing. Um, and so to the extent that the court believes that there is no damages or there are no damages, um, uh, that should be a dismissal without prejudice because, uh, for example, even as to the tax liability issues, if we lose on, um, um, um, because we have no tax liability at this point, we could have tax liability next month. Um, and dismissal should have been, uh, without prejudice. But as I said, I think we have sufficient, um, reputational damages in the form of, of lost clientele, where we can, if we make that allegation, that would be sufficient to show particularized harm, um, for purposes of, of complying, um, with the article three standing requirements, as well as, uh, uh, 1962, uh, 18 USC, 1962. You, um, there were several clusters of deficiencies with the complaint that explained the dismissal and one was the damages. And I hear you arguing that if given the opportunity to replete, you would be able to satisfy the standing requirements by alleging a more tangible injury. Um, I haven't seen in your briefing and maybe I'm missing it. What new information you have that would enable you to make allegations that would overcome the deficiencies in the pleadings as to the issue of an enterprise and as to the issue of an underlying pattern of racketeering activity. Is there some new information that you would be able to plead to overcome those hurdles? Well, Judge Robinson, with respect to the damages, as I said, the what, what my client who representing itself at the time, uh, was, was alleging was this loss of clientele. Um, so that has already happened. Um, it was pleaded as a, as a reputational injury, but should have been simply pleaded as loss of clientele. Um, I think judge Robinson was asking you about the other alleged deficiencies relating to enterprise and the like. What? Sure. And with respect to the enterprise, um, I think what the district court did here was analyze the complaint only from the perspective of an association, in fact, enterprise. Um, and, and I think again, I'll confess, I think that was a mistake because an association in fact requires a series of interrelated acts, uh, for the furtherance of a common goal. Um, and we don't have that here, but what we do have are a series of legitimate enterprises, the medical offices, which presumably do provide legitimate medical services, um, and which are corporations and LLCs, um, who qualify as enterprises, uh, under, under the RICO act, um, and who are also, uh, controlled by persons who are separate, um, from those, uh, from those enterprises. And so, um, under, under this court's precedent on the Supreme Court's precedent, that is sufficient on the RICO because those persons use legitimate enterprises, uh, for a corrupt purpose, uh, which is to basically tax avoidance. So if, let's assume for a second that we accepted your, I, I, I, it, it, it might be a little bit of a reinterpretation of the theory of the case, but the theory that we're not alleging a single RICO conspiracy, we're actually alleging a whole bunch of little mini conspiracies, each one of which would then have to be, uh, engaging in a pattern of racketeering activity. Do you have any new allegations as to the conduct of any of those mini enterprises or, or, you know, the two-party enterprises, um, as to their pattern of racketeering activity, or is that aspect of your allegations, would that be the same in an amended complaint? Your Honor, that would be the same in the amended complaint because to our knowledge, um, the scheme has come to an end, um, uh, so, or at least with respect to my client, or at least I would hope. Um, so, uh, with respect to, uh, the, the checks that we were able to locate by, by, um, requesting them from the banks, I don't think that would change. Um, and the only, again, I think the only difference, uh, in an amended complaint would be if, if we were to discover that the scheme is somehow continuing, which I, again, I hope it is not, but, um, there, there are no additional facts that I'm aware of, uh, that would constitute, um, uh, a, a, a different pattern than the one that was already alleged. Okay. Thank you, Mr. Ginsburg. You're reserved three minutes for rebuttal. Um, we'll hear from the appellees, uh, next, um, uh, Mr. Poles, I think you've divided it up so that you have nine minutes and then, um, three of your friends will have one minute each. So you guys can just, um, proceed in the order that you'd like to, to argue. Yes. I think I'm on speaker and, and, uh, can I be heard? Yes. Thank you. Uh, good morning, your honors. My name is Donald Poles. I'm arguing basically on behalf of, uh, all of the, uh, appellees that are here today. Um, and, uh, I, I believe that judge Rakoff and judge Robinson, um, both hit the nail on the head as to different aspects of, uh, why there is no RICO claim, why no RICO claim has been alleged, um, in particular, uh, as far as damages are concerned, um, damage to reputation. Let me, let me, uh, interrupt you. Forgive me. Um, the, the, your adversary seems to be, um, suggesting, uh, that even though the complaint was deficient, frankly, in numerous respects, and even though, uh, no formal motion, and I'm not saying even any informal motion to amend was made below, somehow we have the duty or power or whatever to say, oh, district court, you shouldn't have dismissed with prejudice because now in his brief and oral argument, he's making some new factual allegations that were never made before were not even right before. Uh, uh, and, uh, so, uh, you should send it or send it back or at least give him, uh, a dismissal without prejudice. Do you know of any authority for a court of appeals doing that? No, I don't believe there is. There'd be no record for the court of appeals to, to rule on. Um, and, uh, I would know that, um, the plaintiff had numerous opportunities to, uh, uh, to request leave to amend their complaint. They have numerous opportunities to raise more facts at no point in the proceedings below did the plaintiff identify one client who dismissed them or specifically told them they would not hire them. Uh, if there was, it would have been required to be disclosed in the initial disclosures as, as a fact witness. It wasn't in the initial disclosure. There's absolutely no basis to, uh, to say the district court was right, but we're ruling on something that was never requested. Um, and the reason we said that, that, uh, the, uh, uh, a motion to amend would be futile in any case is that, uh, at no point did plaintiff ever allege a particular client, a, uh, some indeterminate future event is not a cognizable damage under RICO. It has to be a concrete economic damage. It has to be a concrete economic damage that is proximately caused by the, uh, the racketeering activity of the defendant, not just an indirect, uh, or a remote cause. True. That's correct. Yes. That that's absolutely correct. Uh, the only reason I didn't make that point is I don't think we even reached that point here, uh, because there's no allegation of a specific damage. Uh, the RICO is not a remedy for every wrong. Uh, it's not, um, uh, a remedy for, uh, loss of reputation for something that may happen in the future. And I just wanted to make another, uh, note about, um, the, uh, potential tax damage, uh, uh, Judge Park, um, very jointly asked, well, has there been any? Um, but in fact, uh, under the, uh, under tax procedure, the IRS would have to issue a notice of deficiency before they could even assess the tax and the, uh, and the taxpayer has a right to a plenary trial. So there couldn't even be any tax damage in a case like this. There's just, and also to, uh, uh, to address the question of standing, the standing here is, is statutory standing, not article three stand, uh, under the statute, the, uh, the plaintiff doesn't have standing if they can't allege a concrete economic harm, that's not a mere speculative possibility. I think what Mr. Ginsburg is trying to argue is that they don't even have article three standing, in which case we wouldn't have jurisdiction. And so it, the dismissal would be without prejudice. I think that's what he's going for there. Is the, the, the, what's the space between article three standing and RICO standing here? Well, there, there could be a dispute between the parties and the, uh, uh, article, uh, RICO standing is much more rigorous than article three standing because the statute specifically says these kinds of damages have to be alleged or that the courts have, uh, interpreted the statute to require these, these kinds of damages have to be alleged. So, uh, I, I think there is a, there is a difference, but in fact, if, if, uh, the, uh, um, if the court found they didn't have jurisdiction, there'd be no jurisdiction to, uh, uh, to, to, to give leave to amend the complaint. The, uh, there's no jurisdiction. There's no jurisdiction. That's a, that's a different issue than a failure to plead a claim. Um, and I think Judge Robinson, uh, also hit a very important point when, uh, she, uh, she made the point about, well, even if we accept individual enterprises, you still have to allege a pattern and you still have to allege predicate acts. And for, for many of these, uh, uh, so-called individual enterprises, um, the, uh, you have maybe one or two checks that were written and the time period is less than two years, which the, the second circuit is generally adopted as a rule of thumb and, and, uh, the pattern analysis. So even, um, uh, under, uh, even if you accept that there's individual enterprises, there's no pattern that it has to be alleged with respect to each enterprise. And also I, I, I question whether there are even any, uh, predicate acts. The only predicate act that, that, uh, um, that the plaintiff is alleging in their brief is money laundering. And, uh, there's no allegation that the funds in the bank accounts against which the checks were written were somehow illegal or ill-gotten gains. There's no allegation that they were, that anyone was trying to hide their revenue or disguise the source of their income. Um, the, the, the, the allegation that it was being done to, uh, to evade taxes, that's a different element of, uh, of the money laundering plan. So there, there's no real allegation of money laundering. Um, basically the, uh, the, the complaint just fails to allege either damages or the substantive elements of RICO. And for that reason, um, the, uh, the district court properly, uh, dismissed the, uh, the complaint. Uh, I see that my time has expired. Um, may I conclude? Uh, briefly, go ahead. Yes. Um, for the reasons just stated, the, uh, the district court's opinion and order should be affirmed. Thank you. Thank you, Mr. Poles. Um, uh, I think up next, uh, is Mr. Eisenberg. Is that right? Uh, yes, your honor. Uh, thank you very much. Um, I represent, uh, uh, the appellees, uh, uh, NBC health, uh, JMP rehab and, uh, individuals, Messrs. Singh and cower. And I, uh, just reserved one minute and I just want to make one small point following up on what judge Robinson had stated. If the, uh, plaintiffs are going with many enterprises at this point, uh, consisting of each, uh, of the individuals and their, and their individual PC, the plaintiffs would have to not only, uh, attempt to allege damages as they previously have unsuccessfully as to what they previously claimed was a larger enterprise. They would have to allege damages with respect to each of the mini enterprises, which they haven't even, uh, attempted to do, or even suggested that they could do. And in the case of my clients, uh, J JMP rehab, uh, cashed one small check. Matt, may I just finish your honor? I've got about 10 more seconds. Go ahead. And with respect to, uh, uh, NBC health, there were two checks for a total of $11,000 cashed with it within a three month period. So certainly with respect to my clients, individual enterprises, alleged individual enterprises, uh, mini enterprises, very similar to the other, uh, defendants, they, they really could not assert any sort of RICO claim against them. Thank you very much for the extra time. Your honors. Thank you, Mr. Asenberg. Um, it looks like next is, um, Mr. Mead. Yes, your honors. Thank you very much. Uh, may I proceed? Thank you, your honor, your honor. Just following up on, on, on my prior counsel's, uh, uh, argument as to pattern, my, my clients, uh, Oksana Podolsky and body acupuncture also had very few checks. There's three checks in less than three months, which in and of itself is an insufficient time for a RICO pattern as, uh, as Mr. Mr. Poles had set forth. Um, and even under Cedric analysis, uh, your honors Cedric, as I cite in page 12 of my brief still require that a corporate employee be conducting, conducting the affairs of the corporation through an onlaw unlawful RICO pattern. Uh, it's not simply enough that, uh, Ms. Podolsky had owned, uh, the facility. They still have to allege, uh, enough to meet a RICO pattern in order to have the enterprise itself, even under legal enterprise. Um, uh, and, uh, judge, I would just note that, uh, the, uh, uh, it looks like I'm out of time judge, uh, uh, uh, I was just going to say, your honor, as far as, uh, uh, the, uh, the existing, the clientele issue, uh, they've referenced 10 clients. They don't reference having lost any one of those clients in, uh, as a result of these RICO allegations. Um, and that speaks volumes. Thank you, your honor. Thank you. Um, and the last epile is Ms. Feld Shiroba. Good morning. Your honors. Uh, I represent a police, uh, Nathaniel Mazza and third Avenue chiropractic PC. And, uh, I also join in all the arguments made by my colleagues on behalf of their police. I would like to bring your attention to my clients who only issued one check, which was a stand alone, never repeated again incident. And, um, therefore the appellant, even if allowed to replete still would not be established a pattern of ricketyrian activity based on this one act. My clients run a long-term legitimate business that provides chiropractic care and, um, at no open-ended continuity because there's absolutely no allegations. Um, I apologize. I think I also ran out of time. May I finish my sentences? You can conclude. I don't think your clock is running. Oh, okay. So, um, so there is no open-ended continuity with my clients because, um, uh, the, uh, appellants also conceded that they have no other, uh, evidence or allegations to make no new ones. So therefore they will not be able to add anything to this. And there's absolutely no indication that my clients have ever been involved in anything like this, that they've ever done anything like this under any circumstances in any different situation. So, uh, because of that, we believe that the district court correctly dismissed the complaint and we're today respectfully ask this court to uphold that decision. Thank you very much for your time. Thank you, counsel. Um, Mr. Ginsburg, you have three minutes, uh, reserved for rebuttal. Yes. Thank you very much, uh, Judge Park. Um, with respect to my colleagues, um, I think the majority of, of, of their time, um, of their presentation was spent on, on, on the issue of damages. Um, and, and, and one of the, one of the points that they raised, um, is, is the difference between article three standing and RICO standing. Um, and on that point, I, I would just, um, uh, refer the court, um, to, to our reply brief, um, and specifically the citation to this court's, um, decision in Motorola credit court versus Uzon, uh, where the court found that where plaintiff lacks RICO standing to assert claims, those claims must be dismissed without prejudice to reassertion at some appropriate later time. Um, and so, um, just again, if, if, if all we're talking about here, um, is, is standing, uh, either pursuant to article three, a particularized harm issue or standing, um, under the RICO statute, um, either way, the, the dismissal should have been without prejudice. Um, and, and what I would suggest to the court respectfully is that if, uh, if, if the dismissal should have been without prejudice and my client granted an opportunity simply to, uh, simply to file a new complaint, uh, the same effect can be achieved simply by allowing my client to file an amended complaint. Yeah. What do you say to the, uh, argument that was just made that if, as you have now conceded, there is not an association, uh, in fact, uh, uh, uh, uh, uh, enterprise consisting of all the defendants. So there, your only remaining claim is against individual and, uh, how, what facts do you have that your alleged loss of clients is the result of an action taken with respect to a particular defendant? Judge Rakoff, actually, I think that's a very good point that was raised. Um, and my response to that is that my client doesn't know which particular transaction or which particular check or which particular series of predicate acts, uh, was the cause of, of its clients abandoning, um, my client as, as, as their representative in these litigations. Um, it, it, it, it would be something that would have to await discovery, um, because, uh, separate from Rico, uh, we could also allege, um, that, that the defendants, uh, even if they did not engage in the conspiracy should be held jointly and severally liable for causing my client's damages. Um, chances are that there was not one particular specific check, uh, that, that, that caused, um, any particular client. So how could they be given the, what the second circuit has said is the, uh, very, uh, tight proximate cause requirement of Rico? How could that possibly meet that requirement? Well, I, I think your honor, the issue will come down to whether the, the defendants, even though they were not acting as an association, in fact, were in, in fact, inflicting damage by their, by continuing their activities. Um, so the, as I said, there was not going to be necessarily, um, one particular series of predicate acts that, that, that can be probably linked to any particular, um, client abandoning my client. But I think at the same time, um, it's, it's the fact that all of these, um, acts by each by, by the defendants that took place over, over a period of time that led to my, my client's involvement, um, and, and the discovery of my client's involvement in the scheme. So I, I think that's something that we can, that we can explore and discovery, um, and, and try to find a, a, a, a, a link, um, for, for praximate cause purposes, um, to, to, for each of the individual clients to attach, um, to, uh, to, to, to the injury that my client felt. Um, and, and I, I'm pretty, I don't see a clock, so I'm, but I'm pretty sure I'm out of time. Um, oh no, oh yes, I am out of time. So, um, I thank the court, um, I thank the panel, um, and I wish everyone a good day and, and, and, uh, uh, healthy, uh, existence. Thank you, counsel. Uh, we'll take the case under advisement. Thank you.